IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NANCY WILLIAMS,

          Plaintiff,

v.                                                CIVIL ACTION NO.  2:12-cv-00511

ETHICON, INC., et al.,

          Defendants.

MEMORANDUM OPINION AND ORDER
*(Defendants' Amended Motion for Summary Judgment)*

Pending before the court is the defendants' Amended Motion for Summary Judgment [ECF No. 99]. As set forth below, the defendants' Motion is **GRANTED in part** and **DENIED in part.**

I.    Background

This case resides in one of seven MDLs assigned to the court by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 60,000 cases currently pending, approximately 28,000 of which are in the Ethicon, Inc. and Johnson & Johnson, Inc. ("Ethicon") Multidistrict Litigation ("MDL"), MDL 2327. In an effort to efficiently and effectively manage this massive MDL, the court decided to conduct pretrial discovery and Motions practice on an individualized basis so that once a case is trial-ready (that is,

after the court has ruled on all summary judgment Motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, the court ordered the plaintiffs and defendants to submit a joint list of 200 of the oldest cases in the Ethicon MDL that name only Ethicon, Inc., Ethicon, LLC, and/or Johnson & Johnson, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 193, *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002327, Aug. 19, 2015, *available at* http://www.wvsd.uscourts.gov/MDL/ethicon/orders.html. I completed this process four times and selected Ms. Williams' case as a Wave 1 case.

On November 17, 2006, Ms. Williams was surgically implanted with the defendants' TVT-Obturator ("TVT-O") and Prolift ("Prolift"), products manufactured by Ethicon. Am. Short Form Compl. ¶¶ 9–10 [ECF No. 21]. Ms. Williams' surgery occurred at Overland Park Regional Medical Center in Overland, Kansas. *Id.* ¶ 11. Ms. Williams claims that as a result of implantation of these devices she has experienced multiple complications. She brought the following claims against Ethicon: (I) negligence, (II) strict liability – manufacturing defect, (III) strict liability – failure to warn, (IV) strict liability – defective product, (V) strict liability – design defect, (VI) common law fraud, (VII) fraudulent concealment, (VIII) constructive fraud, (IX) negligent misrepresentation, (X) negligent infliction of emotional distress, (XI) breach of express warranty; (XII) breach of implied warranty, (XIII) violation of consumer protection laws, (XIII) violation of consumer protection

2

laws, (XIV) gross negligence, (XV) unjust enrichment, (XVII) punitive damages, and (XVIII) discovery rule and tolling. *Id.* ¶ 13.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to

preclude the granting of a summary judgment Motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial Motions in MDL cases. The choice of law for these pretrial Motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive Motion, the court generally refers to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

Here, the plaintiff originally filed her case in the Western District of Missouri. Therefore, Missouri law governs the choice-of-law analysis. Missouri law employs

"the most significant relationship test" to determine which state's substantive law to apply in a tort action. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969) (en banc). Under this test, the court must evaluate the contacts of each interested state and determine which state "has the most significant contacts" with the lawsuit. *Id.* In doing so, the court balances four factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the case occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Wright v. Miller*, 736 F. Supp. 1024, 25-26 (W.D. Mo. 1990).

Ms. Williams was a resident of Kansas at the time of her implantation surgery, which took place in Kansas. She suffered from her injuries in Kansas for many years prior to moving to Missouri. The parties agree, as does the court, that these principles compel application of Kansas law to the plaintiff's claims. Thus, the court applies Kansas' substantive law to this case.

### III. Analysis

Ethicon argues that it is entitled to summary judgment on all of Ms. Williams' claims because her claims are time-barred by the statute of limitations. Mem. Am. Supp. Mot. Summ. J. 1 [ECF No. 100]. Alternately, Ethicon argues that the Kansas Product Liability Act ("KPLA") requires all of Ms. Williams' claims to be consolidated into a single of cause of action, and that the remaining claim should be dismissed because it is without evidentiary or legal support. *Id.* Ms. Williams agrees that this court should dismiss several of the counts listed in her Amended Short Form

5

Complaint because they are not recognized by Kansas law. However, Ms. Williams contends that she has a viable claim under KPLA for both design defect and failure to warn theories. Pl.'s Resp. Mem. Opp. Mot. Summ. J. 1 [ECF No. 107].

Accordingly, the defendants' Motion with regard to all other claims is **GRANTED**: (I) negligence, (II) strict liability – manufacturing defect, (III) strict liability – failure to warn, (IV) strict liability – defective product, (V) strict liability – design defect, (VI) common law fraud, (VII) fraudulent concealment, (VIII) constructive fraud, (IX) negligent misrepresentation, (X) negligent infliction of emotional distress, (XI) breach of express warranty; (XII) breach of implied warranty, (XIII) violation of consumer protection laws, (XIV) gross negligence, and (XV) unjust enrichment. Below, the court applies the summary judgment standard to the remaining claim.

### A. Statute of Limitations

#### 1. Missouri Borrowing Statute and the Kansas Statute of Limitations

Under the rules of the state of Missouri, when a court rules on statute of limitations issues, the law of the forum state is applied. *Alvarado v. H & R Block, Inc.*, 24 S.W.3d 236, 241 (Mo. Ct. App. W.D. 2000). As stated previously, because this case was first filed in the Western District of Missouri, Missouri is the forum state.

When a cause of action "originates" in another state, however, that state's statute of limitations becomes applicable through Missouri's Borrowing Statute, § 516.190. Mo. Rev. Stat. § 516.190 (2015); *Wright v. Campbell*, 277 S.W.3d 771, 773–34 (Mo. Ct. App. W.D. 2009) (internal quotations omitted). The Missouri Borrowing

Statute states, "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Mo. Ann. Stat. § 516.190. Thus, if Ms. Williams' case originated in Kansas, and the statute of limitations had run on her claim under Kansas law, it must be dismissed in this court under the Borrowing Statute of Missouri.

"Originated" as used in the Missouri Borrowing Statute has the same meaning as that of "accrued" in Missouri's statute of limitations. *Wright*, 277 S.W.3d at 774. A claim "accrues" once the evidence places a reasonably prudent person on notice of a potentially actionable injury. *Powel v. Chaminade Coll. Preparatory, Inc.,* 197 S.W.3d. 576, 582 (Mo. 2006) (quoting *Bus. Men's Assurance Co. of Am. v. Graham*, 984 S.W.2d 501, 507 (Mo. 1999) (en banc)).

Even if I assume *arguendo* that Ms. Williams' case "originated" in Kansas as defined by Missouri Statute § 516.190, this action would not be fully barred by Kansas' statute of limitation, and therefore, Missouri's Borrowing Statute does not preclude Ms. Williams' claim. Product liability claims brought under KPLA follow Kansas' two-year statute of limitations. Kans. Stat. Ann. §§ 60-513, 60-3301 et seq., 60-3302(c); *Fennesy v. LBI Mgmt. Inc.*, 847 P.2d 1350, 1354 (Kan. 1993). The statute of limitations does not begin to run "until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." Kans.

7

Stat. Ann. § 60-513(b). This is an objective standard. *Burton v. R.J. Reynolds Tobacco Co.*, 181 F. Supp. 2d 1256, 1268 (D. Kan. 2002).

To determine when "substantial injury" occurs, Kansas case law maintains that, "[t]he statute of limitations was not designed to force injured parties into court at the first sign of injury regardless of how slight it may be, just because the injury and damages resulting therefrom may be permanent in nature." *Olson v. State Highway Comm'n of Kansas*, 679 P.2d 167, 174 (Kan. 1984). Under the alternate method of determining the start of the statute of limitations clock, the relevant inquiry is "when the fact of injury became 'reasonably ascertainable' to the injured party-not when the injured party had knowledge of the fact of injury." *Burton,* 181 F. Supp. 2d at 1268. Where the evidence is in dispute as to when the fact of injury first became reasonably ascertainable to plaintiffs or when substantial injury first appears, the issue should be determined by the trier of fact. *Olson*, 679 P.2d at 174.

I find that questions of fact remain in dispute concerning when the statute of limitations began to run, and accordingly **DENY** Ethicon's Motion based on Kansas' statute of limitations.

### 2. The Missouri Statute of Limitations

Missouri considers the statute of limitation to be a procedural rule, thus Missouri applies its own five-year statute of limitations to Ms. Williams' tort claims. *See Alvarado*, 24 S.W.3d at 241; Mo. Ann. Stat. § 156.120. Pursuant to § 156.120(4), a tort claim "shall not be deemed to accrue when the wrong is done . . . but [rather,] when the damage resulting therefrom is sustained and is capable of ascertainment."

8

*Huffman v. Credit Union of Texas*, 758 F. 3d 963, 967 (8th Cir. 2014) (quoting Mo. Ann. Stat. § 156.100). Nevertheless, Missouri's own statute of limitations would not bar Ms. Williams' action for the reasons set forth below.

The term "capable of ascertainment" is left undefined in the statute, and thus this court turns to Missouri case law for guidance. Many Missouri courts adopt the approach, as stated previously, that: "the statute of limitations begins to run when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Wright*, 277 S.W.3d at 774. "Capable of ascertainment" has also been compared to putting a plaintiff on "inquiry notice." *Powel,* 197 S.W.3d at 583. Under this standard, "a cause of action accrues when the damage can be discovered [by a reasonable person using reasonable diligence], not when it is actually discovered." *State ex rel. Gasconade Cty. v. Jost*, 291 S.W.3d 800, 804 (Mo. Ct. App. E.D. 2009) (internal citations omitted). Even using Ethicon's proposed date of December 2007, Ms. Williams' action was still timely when she filed on February 9, 2012.

Thus, Ethicon's Motion is **DENIED** because Ms. Williams' claim is timely under Missouri law.

B. **Effects of the Kansas Product Liability Act**

As the law requires, and as both parties agree, the Kansas Products Liability Act requires all of plaintiff's causes of action to be consolidated into one claim of legal liability. *See Savina v. Sterling Drug, Inc.* 795 P.2d 915, 931 (Kan. 1990); *see also Patton v. Hutchinson Wil-Rich Mfg.,* 861 P.2d 1299, 1311 (Kan. 1993). Under KPLA,

9

a plaintiff must show a product is defective through one of three theories: design defect, manufacturing defect, or failure to warn. *Baugh v. Eli Lilly & Co.*, 356 F. Supp. 2d 1177, 1183 (D. Kan. 2005).

Ethicon's Motion regarding consolidation of claims is **GRANTED**.

### 1. Design Defect

As Ms. Williams noted in her response, Ethicon did not challenge a design defect theory in its motion. To the extent a motion is being made, Ethicon has failed to meet its burden under the summary judgment standard of showing a genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 250; *Celotex*, 477 U.S. at 323–24.

Accordingly, to the extent Ethicon's Motion challenges the theory of design defect, the Motion is **DENIED**.

### 2. Manufacturing Defect

Ethicon argues that Ms. Williams has failed to allege any evidence that its products deviated from their intended design. Defs. Mem. 17. Under Kansas law, the plaintiff must show that a flaw was present in the product at the time it was sold and that the defect caused the alleged injury. *Savina*, 795 P.2d at 923. Ms. Williams did not respond to Ethicon's argument, and I do not find specific facts showing a genuine dispute of material fact for trial. *See Celotex,* 477 U.S. at 322-23.

Ethicon's Motion regarding the theory of manufacturing defect is **GRANTED**.

### 3. Failure to Warn

After considering the parties' proffered arguments and evidence, I find that

genuine disputes of material fact exist regarding the plaintiff's failure to warn KPLA claim. Ethicon's Motion is **DENIED**.

IV. Conclusion

For the reasons discussed above, it is **ORDERED** that the defendants' Amended Motion for Summary Judgment [ECF No. 99] is **GRANTED in part** and **DENIED in part**. As the plaintiff has conceded these claims, the defendants' Motion is **GRANTED** regarding the following claims: negligent manufacturing (part of Count I); (Count II) strict liability – manufacturing defect; (Count III) strict liability – failure to warn; (Count IV) strict liability – defective product; (Count V) strict liability – design defect; (Count IX) negligent misrepresentation; (Count X) negligent infliction of emotional distress; (Count XIII) consumer protection; and (Count XV) unjust enrichment.

The defendants' Amended Motion on the claim under the Kansas Product Liability Act for manufacturing defect theory is **GRANTED**.

The defendants' Motion as to the remaining claim under the Kansas Product Liability Act for defective design and failure to warn theories, (XVII) punitive damages, and (XVIII) discovery rule and tolling is **DENIED**. Ethicon's Motion regarding the statute of limitations is also **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 10, 2017

11

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE